IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CHADRICK FORD,                              §
Institutional ID No. 00772155,             §
SID No. 05541082,                          §
                                           §
                    Plaintiff,             §
                                           §
v.                                         §    CIVIL ACTION NO. 5:22-CV-317-BQ
                                           §
TEXAS DEPARTMENT OF CRIMINAL               §
JUSTICE, *et al.*,                         §
                                           §
                    Defendants.            §

## REPORT AND RECOMMENDATION

Proceeding pro se and *in forma pauperis*, Plaintiff Chadrick Ford filed this action under 42

U.S.C. § 1983, claiming violations of his constitutional rights during his incarceration at the Texas

Department of Criminal Justice (TDCJ) John Montford Unit.  Compl. 3, 5–6, ECF No. 1; *see*

Questionnaire 1, ECF No. 16.[1]  The United States District Judge transferred this case to the

undersigned United States Magistrate Judge for further proceedings.  ECF No. 12.  The

undersigned thereafter reviewed Ford's Complaint, as well as authenticated records from TDCJ,

and ordered Ford to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93

(5th Cir. 1976).  ECF Nos. 1, 14, 15.  Ford timely completed and returned the questionnaire.  ECF

No. 16.

Not all parties have consented to proceed before the undersigned magistrate judge.  In

accordance with the order of transfer, the undersigned makes the following findings, conclusions,

and recommendations to the district judge.

---

[1] Page citations to Ford's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing

complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A. Ford's Allegations and Authenticated Records

Ford asserts claims against the following Defendants:   (1) TDCJ John Montford Unit (Montford); (2) Warden Ronald S. Ivy; (3) Grievance Officer Alyssa Milstead; (4) Captain Brant Donaldson; (5) Captain Ricky Rodriguez; (6) Captain Clayton D. Straughan; (7) Captain Adam Ybarra; and (8) Mail Clerk Gloria J. Carrington.[2] Compl. 1, 3; Questionnaire 1, 7.

Ford avers that on December 1, 2022, Montford subjected him and his cell area "to cruel and unusual punishment . . . [and] violat[ed] the equal protection clause by placing offenders . . . exposed to [COVID]-19" in his row. Compl. 5–6. Ford alleges his row is designated for inmates in the psychiatric program, not for those "with biological/medical problems" such as COVID-19, who should have been "housed in the . . . medical ward or clinic." Questionnaire 2. Instead, Ford contends his row became a "quarantine zone," with signs posted indicating that those entering must "wear . . . personal protection equipment" (PPE). *Id.* at 3. The inmates, however, were not given any PPE and were also "fed from the same cart by officers using th[e] same PPE . . . which were [sic] contaminated." *Id.* In Ford's view, the fact that he was not protected violated the Equal Protection Clause "it was an act of deliberate indifference." *Id.* at 4. He also argues that exposing him to COVID-19 was cruel and unusual punishment, thereby violating the Eighth Amendment. *Id.* While Ford explains this experience caused him anxiety and stress, he contends Warden Ivy

---

[2] Ford added claims against Defendants Donaldson, Rodriguez, Straughan, Ybarra, and Carrington through his questionnaire responses. Accordingly, the Court **ORDERS** the Clerk to amend the case caption to reflect the added Defendants.

denied him a COVID-19 test, so he is not certain whether he contracted COVID-19.  *Id.*  Ford

avers Warden Ivy is responsible for these alleged constitutional violations because he is in charge

of "any and all actions and movements, especially during the 'COVID pandemic.'"  *Id.* at 3.

Ford also contends that Montford and Warden Ivy placed him and others on "quarantine

restrictions," where he was denied access to the dayroom and "shower[ing] for up to 5 days," and

"was forced to wallow in [his] own filth as [Montford's] cell plumbing was out of order."  *Id.* at

5.  In addition, his cell was not provided with temperature checks, cleaning materials, or "safety

assurances," which he also argues violated the Eighth Amendment.  *Id.*

Next, Ford alleges that on December 10, 2022, he "became a victim of illegal mail

interference" when his legal mail was returned undeliverable with a "ticket inside that read

'General [I]nmate Correspondence – [TDCJ] – [I]nstitutional Division.'"  Compl. 5.  Ford

contends this letter contained "evidence of self-incrim[i]nation" and was sent to the National

Clemency Project with "'legal mail' written on the front and back," but Montford mailroom

employees illegally inspected it.  *Id.*; Questionnaire 1–2.  Ford believes the mail was opened both

prior to leaving and upon its return to the facility because it looked like it had been cut open and

twice re-sealed with tape.  Questionnaire 2.  According to Ford, the mail should not have been

opened "outside of [his] personal supervision as is procedure."  *Id.*  Because of this, Ford

experienced stress, anxiety, and fear for his freedom because he believes his parole will be denied.

*Id.*  Ford explains that the letter should have been returned unopened and that the "head clerk in

the mailroom, . . . Gloria J. Carrington," is liable, as is Warden Ivy, who is "responsible for all that

happens under his watch."  *Id.* at 1.

Ford also asserts that Warden Ivy "does not honor the informal or formal [grievance]

resolution process" and "does not respond to requests."  Compl. 3.  Similarly, he avers Grievance

Officer Milstead rejects all grievances "[n]o matter how much merit the grievance holds." *Id.* He contends that Ivy and Milstead's failure to "thoroughly investigate[]" his grievances violates his "rights to due process by denying [him] the right to a proper investigation and some form of resolution." Questionnaire 7.

According to Ford, Montford is responsible for these "illegal activities conducted by the staff[]" because of its failure to train employees. Compl. 3. While he alleges that he does not know who is responsible for the inadequate training, Captains Brant Donaldson, Ricky Rodriguez, Clayton D. Straughan, and Adam Ybarra (collectively, Captains), are "responsible for any officers [sic] conduct" because they are "superior officers." Questionnaire 7. Ford also does not know the training procedures, but contends that because Montford is a psychiatric facility, officers should "pay more attention to [inmates]." *Id.* at 8. Because of the deficient training, Ford avers he was: (1) possibly exposed to COVID-19; (2) denied bedding, clothing, showers, and proper medical attention; (3) stressed and anxious; and (4) denied COVID-19 testing. *Id.* He requests $350,000 in punitive damages and "to be allowed parole ahead of time." *Id.* at 9; Compl. 4.

Based on the foregoing factual allegations, the Court construes Ford's assertions as alleging the following claims against the following Defendants: (1) Warden Ivy and Mail Clerk Gloria Carrington—interference with Ford's access to the courts by opening his legal mail; (2) Montford and the Captains—failure to train and/or supervise; (3) Warden Ivy and Montford—Eighth Amendment violations for exposing him to COVID-19 and placing him on quarantine restrictions; (4) Warden Ivy and Montford—Equal Protection Clause violation for exposing him to COVID-19; and (5) Warden Ivy and Grievance Officer Milstead—failure to return or investigate grievances. Compl. 3, 5–6; Questionnaire 1, 7.

**B.  Expedited parole is not a viable form of relief under 42 U.S.C. § 1983.**

In his Complaint, Ford requests "[t]ime reduction/[a]ccredited time." Compl. 4. In his questionnaire responses, Ford clarifies this request, stating that he has completed "27 of the 30 [years] required for [him] to come up for parole" and "that to be allowed parole ahead of time . . . wouldn't be too much of a stretch of the court's abilities . . . to correctly compensate [him] for [his] injuries." Questionnaire 9.

"A § 1983 claim challenges the conditions of confinement, rather [than] the execution or duration of a sentence." *Newton v. La. Dep't of Corr.*, No. 20-0447, 2020 WL 1869018, at *1 (W.D. La. Apr. 13, 2020). "In this case, [Ford] indeed challenges the general prison conditions, but he seeks an accelerated release from prison, which is properly asserted as a *habeas* action, not as a civil rights action." *Id.* (citations omitted); *see also Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) ("If a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release, the proper vehicle is § 1983 suit." (alterations in original) (internal quotation marks and citation omitted)). It does not appear that Ford intends to bring a habeas claim because he challenges the conditions, not the duration, of his confinement. Instead, he merely requests early release as a consequence of finding Defendants civilly liable. If Ford does indeed seek early release, he is free to file a federal habeas petition after exhausting state remedies. *See Kimble v. Jones*, No. 6:21cv122, 2022 WL 737463, at *1 (E.D. Tex. Jan. 14, 2022), *R. & R. adopted by* 2022 WL 741714 (E.D. Tex. Mar. 9, 2022). Because the requested relief is not cognizable in a § 1983 suit, the undersigned recommends the district judge dismiss Ford's claim for injunctive relief.[3]

---

[3] Ford also states that Grievance Officer Milstead "should be fired from the grievance department." Compl. 3. To the extent Ford seeks such relief through this action, his request should also be dismissed. *See, e.g.*, *Robinson v. Salmeron*, No. H-20-1160, 2020 WL 1673184, at *2 (S.D. Tex. Apr. 2, 2020) ("Plaintiff's request that the [c]ourt fire the defendants is denied, as the [c]ourt has no authority to terminate the defendants' employment." (emphasis omitted)); *Coleman v. Strickland*, No. 2:17-cv-133-KS-MTP, 2018 WL 5303341, at *1–2 (S.D. Miss. Aug. 9, 2018) (finding plaintiff's request to have defendant fired as a sheriff's deputy "unattainable in a § 1983 action" (internal quotation marks and citation omitted)), *R. & R. adopted by* 2018 WL 5305541 (S.D. Miss. Oct. 25, 2018).

Based on the foregoing, the only viable form of relief Ford seeks through this action is his request for monetary damages.

### C. Montford is immune from suits seeking money damages and is not a proper party under 42 U.S.C. § 1983.

Ford names Montford as a Defendant. Under the Eleventh Amendment, however, "an unconsenting State . . . is immune from suits by its own citizens." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). Moreover, "TDCJ is an arm of the state of Texas and, as such, is immune from [suit] under the Eleventh Amendment." *Dottin v. Tex. Dep't of Crim. Just.*, No. 1:13-CV-710, 2014 WL 11498078, at *11 (E.D. Tex. Nov. 25, 2014), *aff'd*, 627 F. App'x 397 (5th Cir. 2015); *see Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) ("As an instrumentality of the state, the TDCJ[] is immune from a suit for money damages under the Eleventh Amendment."). Thus, Ford cannot seek monetary damages from Montford because it is immune from suit under the Eleventh Amendment.

In addition, Montford is not a proper Defendant under § 1983. Section 1983 provides for liability against any *person* who, acting under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (2017). Neither states nor state agencies—i.e., the TDCJ Montford Unit—are "persons" against whom a § 1983 claim for money damages can be asserted. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Accordingly, the undersigned recommends the district judge dismiss Ford's claims against Montford.

### D. COVID-related claims

Ford avers that Warden Ivy violated his rights under the Equal Protection Clause and the Eighth Amendment "by placing [him] in obvious harm/danger . . . [and] subjecting [him] to cruel

and unusual punishment by giving [him] quarantine restrictions." Compl. 6.  While Ford explains this experience caused him anxiety and stress, he is not certain whether he actually contracted COVID-19.  Questionnaire 4.  Ford holds Warden Ivy responsible for exposing him to COVID-19 because he is in charge of "any and all actions and movements, especially during the 'COVID pandemic.'"  *Id.* at 3.  He also contends that Warden Ivy placed him and others on "quarantine restrictions," where he was denied access to the dayroom for approximately two-and-a-half months, could not "shower for up to 5 days," and "was forced to wallow in [his] filth as [Montford's] cell plumbing was out of order."  *Id.* at 5–6; *see* Compl. 5–6.  In addition, his cell was not provided with temperature checks, cleaning materials, PPE, or safety assurances, and was fed from contaminated food carts, which he also argues violated the Eighth Amendment. Questionnaire 5.

### 1.    *Eighth Amendment*

Ford essentially alleges that by (1) exposing him to COVID-19, (2) feeding him food from COVID-19-contaminated food carts, (3) failing to provide him with PPE, temperature checks, and safety assurances, and (4) placing him on quarantine restrictions, Warden Ivy subjected him to unconstitutional conditions of confinement.  While the Constitution does not mandate comfortable prisons, it does require humane ones, and the Eighth Amendment governs the conditions under which inmates are confined.  *Reagan v. Burns*, No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *13 (N.D. Tex. Oct. 30, 2019) (quoting *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989)), *R. & R. adopted by* 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019); *see Talib*, 138 F.3d at 215 ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").  The Eighth Amendment does not protect prisoners from those conditions that cause "discomfort or inconvenience."  *Wilson*, 878 F.2d at 849.  Indeed, the Fifth Circuit, following the

Seventh Circuit's lead, has noted that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel . . . ." *Id.* at 849 n.5 (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).

Moreover, only those officials who know of and disregard "an excessive risk to inmate health or safety" are liable under the Eighth Amendment for denying inmates humane conditions of confinement. *Farmer*, 511 U.S. at 837.

> A constitutional violation . . . occurs only when two requirements are met. First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need. Second, under a subjective standard, we must determine whether the prison official responsible was deliberately indifferent to inmate health or safety.

*Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal citations and quotation marks omitted).

A prisoner in a conditions of confinement case "must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis.*" *Reagan*, 2019 WL 6733023, at *13 (citing *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630–31 (5th Cir. 2003)); *see also Mayes v. Travis State Jail*, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008) ("A prisoner seeking to recover damages on a conditions of confinement claim must establish a physical injury that is more than de minimis.").

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). A supervisory official is not liable for the acts of his subordinates unless: (1) he affirmatively participated in an act that caused a constitutional deprivation, or (2) he implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).

A plaintiff must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. Further, vague and non-specific allegations of wrongdoing are insufficient to support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, No. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010))), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019); *see also Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (explaining that to assert a viable § 1983 claim, "the plaintiff must allege facts reflecting the defendants' [personal] participation in the alleged wrong," but "to prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force in causing the plaintiff's harm").

First, Ford does not assert any facts showing that Warden Ivy was personally involved in implementing COVID-19 restrictions or placing the exposed inmates on his row. He merely alleges that Warden Ivy was "completely aware of all the illegal activity" and "[r]esponsible for placing these COVID-19 inmates in [Ford's] area." Compl. 3. The Court need not accept as true "unwarranted factual inferences" asserted by Ford to support a claim of liability against Warden Ivy. *Lloyd*, 2019 WL 4786874, at *6 (citation omitted). "Even a liberally construed *pro se* civil rights complaint . . . must set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Because Ford pleads no facts

showing that Warden Ivy caused his alleged constitutional violation, dismissal is warranted on this basis alone. *Thompson*, 709 F.2d at 383 (rejecting plaintiff's argument that "[defendant's] personal involvement might be inferred" from his allegations); *Miguel v. Cochran*, No. 5:20-CV-041-BQ, 2020 WL 5778130, at *4–5 (N.D. Tex. Sept. 11, 2020) (recommending dismissal where plaintiff's "claims [we]re supported by nothing more than naked, conclusory assertions of responsibility without any factual support" because "[s]uch vague and conclusory statements do not warrant a presumption of truth nor do they state a claim"), *R. & R. adopted by* 2020 WL 5761087 (N.D. Tex. Sept. 28, 2020).

Ford's claims also fail because he does not allege any facts showing Warden Ivy was aware of a substantial risk of serious harm and deliberately disregarded it. Even assuming Warden Ivy was aware that inmates exposed to or currently sick with COVID-19 were housed with or near non-sick inmates, Ford asserts no facts showing that Warden Ivy "subjectively believe[d] the measures [he was] taking [were] inadequate." *Valentine v. Collier*, 956 F.3d 797, 802–03 (5th Cir. 2020) (per curiam) (being "general[ly] aware[] of the dangers posed by COVID-19" did not show TDCJ's deliberate indifference and amounted to "mere 'disagreement' with TDCJ's medical decisions").

Absent facts showing that Warden Ivy was deliberately indifferent to the risks posed by COVID-19, Ford cannot state an Eighth Amendment claim, especially where Ford's own allegations show that actions were taken to prevent the spread of COVID. *See* Compl. 6 (alleging Warden Ivy imposed quarantine restrictions); Questionnaire 3 (complaining that officers were given PPE and wore gloves, face masks, and gowns while inmates were not, apparently because "PPE protects only the wearer of such equipment"), 5 (describing "quarantine restrictions" as being "restricted to housing, denied dayroom, and . . . showers," etc.); *Simon v. Larpenter*, 2020

WL 9349528, at *7 (E.D. La. Nov. 10, 2020) ("Inadequate measures alone are not dispositive of the [defendant's] mental state; '[s]uch an approach resembles the standard for civil negligence, which *Farmer* explicitly rejected.'" (quoting *Valentine*, 956 F.3d at 802)), *R. & R. adopted by* 2021 WL 1614813 (E.D. La. Apr. 26, 2021).

Moreover, Ford's claims based on Warden Ivy's alleged (1) failure to provide temperature checks, safety assurances, and PPE, and (2) imposition of quarantine restrictions on inmates, which resulted in denial of access to the day room, cleaning supplies for about two months, and showering for up to five days—all of which resulted in a generalized fear of contracting COVID-19—are not viable. This is because he alleges, at best, only de minimis injuries in connection with these claims. *See Mayes*, 2008 WL 4657078, at *1 ("A prisoner seeking to recover damages on a conditions of confinement claim must establish a physical injury that is more than de minimis."); *Pike v. Cerliano*, No. 6:20cv619, 2021 WL 3704377, at *3 (E.D. Tex. Aug. 3, 2021) ("[I]t is well-settled that the general fear of contracting COVID-19 or that COVID-19 is spreading is insufficient to state a claim under section 1983."), *R. & R. adopted by* 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021); *Haralson v. Campuzano*, 356 F. App'x 692, 696–97 (5th Cir. 2009) (per curiam) (confining plaintiff without "out-of-cell exercise and other recreational activity for seven months," absent "serious illness or injury," does not state a claim under the Eighth Amendment); *Gray v. Hardy*, 826 F.3d 1000, 1005–06 (7th Cir. 2016) (recognizing an Eighth Amendment violation for lack "of cleaning supplies and running water only in extreme circumstances," such as when combined with exposure to vermin, insects, birds, and having his towel changed out only once in eight months)[4];

---

[4] Ford pleads no facts supporting the existence of extreme circumstances requiring cleaning supplies. Ford conclusorily alleges that he was forced to "wallow in [his] own filth,"—purportedly because he was denied showers (*see* Questionnaire 5 ("being denied showers and soap . . . forced [him] to wallow in [his] own filth as [Montford's] cell plumbing was out of order"))—which fails to show extreme circumstances demonstrating that a denial of cleaning supplies, in such conditions, would constitute cruel and unusual punishment. *See Carroll v. Rupert*, No. 6:15cv569, 2017 WL 2369387, at *5 (E.D. Tex. May 3, 2017) (dismissing plaintiff's claims that he was denied soap, showers, and cleaning supplies because "[h]e provided no facts to support his broad claims"), *R. & R. adopted by* 2017 WL

*Cribbs v. Pollock*, No. 1:22-CV-05796 SEC P, 2023 WL 1937337, at *3 & nn.4, 5 (W.D. La. Jan. 24, 2023) (collecting cases finding no Eighth Amendment violation where prisoners were denied showers for a couple of days up to a week), *R. & R. adopted by* 2023 WL 1930415 (W.D. La. Feb. 10, 2023); *Burchfield v. Jones*, No. 6:20-cv-6135, 2021 WL 1976626, at *6 (W.D. Ark. May 18, 2021) (dismissing plaintiff's conditions of confinement claim because he did not allege any actual injury resulted from failing to test inmates for COVID-19); *Stafford v. Gentry*, No. 4:22-cv-04092-SOH-BAB, 2023 WL 2258365, at *3 (W.D. Ark. Feb. 2, 2023) (concluding that because plaintiff did not allege he became ill as a result of exposure to COVID-19, he did not suffer actual, non-de minimis injury (citing *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008)) *R. & R. adopted by* 2023 WL 2254582 (W.D. Ark. Feb. 27, 2023).

What is more, Ford asserts only psychological harm as a result of the alleged conditions. *See* Questionnaire 5. As such, 42 U.S.C. § 1997e(e) bars Ford's recovery of any compensatory damages in connection with his claims. *See Geiger*, 404 F.3d at 375 (holding that under § 1997e(e), "compensatory damages for mental or emotional injuries [are] non-recoverable, absent physical injury").

In sum, Ford fails to allege facts showing Warden Ivy's personal involvement in or deliberate indifference to placing quarantine restrictions on Ford and other inmates, and Ford's alleged injuries are de minimis. Thus, the undersigned recommends the district judge dismiss Ford's Eighth Amendment claims regarding his conditions of confinement.

---

11446939 (E.D. Tex. June 23, 2017); *see also Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (recognizing that "filthy cell conditions may constitute an Eighth Amendment violation," where facts indicate that living in such conditions—"fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls"— would present a substantial risk of serious harm).

## 2.    *Equal Protection*

Ford contends his housing area became a "quarantine zone" when he was exposed to COVID and sick individuals were placed in his cell row.  Questionnaire 3.  In addition, he alleges that while Montford employees were required to wear PPE in that area, the inmates were not given any PPE and were also "fed from the same cart by officers using the same PPE . . . which were [sic] contaminated."  *Id.*  In Ford's view, Warden Ivy violated the Equal Protection Clause through these occurrences because they were "act[s] of deliberate indifference" where he was not protected.  *Id.* at 4.

To establish a violation of his right to equal protection, Ford "must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class[,]' or (b) he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted); *see Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam).  "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."  *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992) (per curiam).

Similar to his Eighth Amendment claims, Ford does not allege any facts showing Warden Ivy's personal involvement in denying him PPE, feeding him from contaminated food carts, placing exposed or sick individuals in the same cell block as him, or otherwise failing to protect him.  His equal protection claims fail on this basis alone.  *See Colone v. Woods*, No. 1:16-CV-113, 2021 WL 1146201, at *17 (E.D. Tex. Feb. 23, 2021) (dismissing plaintiff's claims because he

"fail[ed] to plead the personal involvement of defendants . . . in any alleged equal protection violation"), *R. & R. adopted by* 2021 WL 1134241 (E.D. Tex. Mar. 23, 2021).

Ford also does not suggest he is a member of any protected class, and prisoners do not constitute a protected class. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("[P]risoners are not considered a suspect class for purposes of equal protection litigation."); *accord Dail v. United States*, No. 3:00-2354-R, 2001 WL 586693, at *3 (N.D. Tex. May 22, 2001) ("Prisoners . . . are not a protected class."). Nor does he contend that any employee acted with discriminatory intent in implementing the complained-of quarantine restrictions or otherwise acted because of a protected characteristic. *See Prescott v. Johnson*, No. 6:18cv577, 2022 WL 672694, at *20 (E.D. Tex. Mar. 7, 2022) (dismissing as frivolous plaintiff's equal protection claim because he "fail[ed] to allege any facts that show[ed] intentional discrimination based on a protected class"), *aff'd* 2023 WL 3723632 (5th Cir. May 30, 2023); *Stanberry v. Gusman*, No. 11-1456, 2011 WL 3490405, at *2 (E.D. La. Aug. 10, 2011) (concluding that "[p]laintiff did not state a cause of action that would establish discriminatory intent because he did not allege that he was treated unequally because of the impact on an identifiable group").

Moreover, his complaint that his area became a quarantine zone is based upon being treated *similarly* to differently situated individuals—i.e., placing him and other inmates in the same "quarantine zone" as sick and exposed inmates when he was neither sick nor exposed—not being treated differently from similarly situated individuals. Ford's claim fails on this additional basis. *See Caine v. Butler*, No. 2:20-CV-661-RAH-CSC, 2023 WL 5424289, at *12 (M.D. Ala. Aug. 1, 2023) (granting defendant's summary judgment motion on plaintiff's equal protection claim based on transferring COVID-19-positive inmates to his unit because he did not show "any similarly situated prisoners who received more favorable treatment than him or that he was somehow

discriminated against based on a constitutionally protected basis"), *R. & R. adopted by* 2023 WL 5418723 (M.D. Ala. Aug. 22, 2023).

Lastly, his claim that Montford employees were given PPE while inmates were not, also fails because Ford is not similarly situated to prison employees. While he alleges that he was placed in the same cell block as inmates exposed to or positive for COVID-19, he does not allege that he interacted with these individuals as Montford employees did. Instead, he merely contends that officers wore the same PPE to serve Ford and COVID-19-positive inmates and that he was not provided with the same PPE as employees. Such allegations do not show Ford was treated differently from similarly situated individuals.[5] *See McGee v. Pontow*, No. 23-1487, 2023 WL 7381450, at *2 (7th Cir. Nov. 8, 2023) (affirming dismissal of prisoner's claim alleging that he was treated differently from janitors who were provided with PPE because "janitors interacted with potentially COVID-positive prisoners more closely than [plaintiff] did—they delivered meals and ice to prisoners" while plaintiff did not "interact with the COVID-positive prisoners").

For these reasons, the district judge should dismiss Ford's equal protection claims against Warden Ivy.

### E. Legal Mail Interference

Ford asserts that on December 10, 2022, he "became a victim of illegal mail interference" when his legal mail was returned undeliverable but was opened by Montford employees both upon leaving and re-entering the facility. Compl. 5. Ford contends this letter contained "evidence of self-incrim[i]nation" and was sent to the National Clemency Project with "'legal mail' written on the front and back," but Montford mailroom employees illegally inspected it. *Id.*; Questionnaire

---

[5] Likewise, Ford is not similarly situated to inmate-trustees, who held a more favorable custody status than did he. *See* Questionnaire 4 (asserting that Montford officials "protected the trustee camp by removing these inmates completely").

1. According to Ford, the mail never should have been opened "outside of [his] personal supervision as is procedure." Questionnaire 2. Because of this, Ford was stressed, anxious, and feared for his freedom because he believed his parole would be denied. *Id.* Ford explains that the letter should have been returned unopened and that Warden Ivy and Mailroom Clerk Carrington are responsible for such interference. *Id.* at 1.

"A prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts." *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). To prevail on an access-to-courts claim, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997); *Bohannan v. Griffin*, No. 4:11-CV-299-A, 2016 WL 3647625, at *13 (N.D. Tex. June 30, 2016) (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)). That is, Ford must plead facts demonstrating "an actual injury arising from this purported denial." *Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014) (per curiam). It is important to note, however, that "[t]he 'injury requirement is not satisfied by just any type of frustrated legal claim.'" *Foreman v. Bowles*, No. 3:01-CV-2117-G, 2003 WL 21730136, at *3 (N.D. Tex. Mar. 31, 2003) (quoting *Lewis*, 518 U.S. at 353). Instead, Ford "must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks to vindicate basic constitutional rights in a civil rights action under . . . § 1983." *Id.* (internal quotation marks and citation omitted).

First, Ford fails to state a claim as to Montford employees opening his *incoming* mail outside of his presence. Standing alone, "the violation of the prison regulation requiring that a

prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights." *Brewer*, 3 F.3d at 825.

Second, Ford's mail interference claim based on his *outgoing* mail fails because he does not aver it prejudiced him. Ford does not contend that Defendants' alleged viewing or opening of his legal mail caused him any harm—e.g., that he was unable to present a nonfrivolous legal claim or defense—nor has he alleged that the contents of his legal mail related to an underlying nonfrivolous cause of action. *See Lewis*, 518 U.S. at 355–56. Instead, he merely alleges that evidence in the letter *could* be used against him, and he fears that his parole, at some unidentified time, will be denied. Questionnaire 2. The district judge should therefore dismiss his access to courts claims. *See, e.g.*, *Day*, 560 F. App'x at 319 (affirming district court's dismissal of SVP's access to courts claim where he did not allege the purported lack of access to courts caused him an actual injury); *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (per curiam) (explaining that prisoner could not state a viable access to courts claim based on defendants' alleged opening and reading of his legal mail "outside of his presence and without his consent," where he did not assert "his position as a litigant was prejudiced"); *Brown v. Carr*, No. C–08–170, 2009 WL 1940057, at *6 (S.D. Tex. July 2, 2009) (concluding prisoner's access to courts claim failed, where he did "not identify any legal materials" defendant allegedly destroyed, nor did he explain "how their loss adversely impacted his civil rights action").

## F. Failure to Return or Investigate Grievances

Ford contends that Warden Ivy "does not honor the informal or formal [grievance] resolution process" and "does not respond to requests." Compl. 3. Similarly, Ford alleges Grievance Officer Milstead rejects all grievances "[n]o matter how much merit the grievance holds." *Id.* He argues that Ivy and Milstead's failure to "thoroughly investigate[]" his grievances

violates his "rights to due process by denying [him] the right to a proper investigation and some form of resolution." Questionnaire 7.

Ford's claims that Warden Ivy and Grievance Officer Milstead did not adequately investigate or respond to his grievances are of no constitutional consequence. A prisoner is not constitutionally entitled "to an adequate grievance investigation." *Elliott v. United States*, No. 3:16-CV-3231-B, 2017 WL 3046872, at *2 (N.D. Tex. May 1, 2017) (citing *Geiger*, 404 F.3d at 373–74 and *Kimble v. Smith*, No. 2:00-CV-352, 2003 WL 21350339, at *3 (N.D. Tex. June 9, 2003)); *see also Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (rejecting appellant's claim that prison official's failure to conduct an adequate investigation into his grievance implicated due process concerns "because [appellant] lacks a protected interest in a favorable resolution to his grievances"). Moreover, a prisoner "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374; *see Aron v. Green*, No. 4:14-CV-109-A, 2014 WL 1917543, at *2 (N.D. Tex. May 12, 2014) ("Denying plaintiff's grievances, or failing to resolve them in the manner preferred by plaintiff, is not a violation of plaintiff's constitutional rights."). Accordingly, the undersigned recommends the district judge dismiss Ford's claims against Warden Ivy and Grievance Officer Milstead based on their alleged failure to adequately investigate and return his grievances.

### G. Failure to Train and/or Supervise

Ford contends Montford is responsible for the alleged "illegal activities conducted by the staff[]" because of its failure to train employees. Compl. 3. While he cannot identify who conducts training, Ford avers the Captains are "responsible for any officers [sic] conduct" because they are "superior officers." Questionnaire 7. Ford does not know their training procedures, but contends that because Montford is a psychiatric facility, officers should "pay more attention to [inmates]."

*Id.* at 8. Because of the deficient training, Ford asserts he was: (1) possibly exposed to COVID-19; (2) denied bedding, clothing, showers, and proper medical attention; (3) stressed and anxious; and (4) denied COVID-19 testing. *Id.*

It is well established that supervisory officials are not liable for the acts of their subordinates unless: (1) they affirmatively participated in an act that caused a constitutional deprivation; or (2) they implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille*, 977 F.2d at 929 (citing *Thompkins*, 828 F.2d at 303). A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. A plaintiff can prove "a government's policy or custom" through means other than reference to formal policy, such as showing the existence of an unconstitutional practice that is so "persistent and widespread" as to constitute a de facto policy or custom. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690–91, 694 (1978). Plaintiffs face a high burden when claiming a level of pervasiveness sufficient to attribute an informal policy to a government entity or supervisory official. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."). Further, even if a plaintiff can prove implementation of a policy, supervisory liability only exists if "the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotation marks omitted) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169–170 (5th Cir. 1985)).

"Even within the difficult world of [supervisory] liability, failure-to-train claims are especially difficult to establish." *Anderson v. Marshall Cnty.*, 637 F. App'x 127, 134 (5th Cir.

2016) (per curiam) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A defendant's "failure to train" employees only gives rise to liability where the failure "evidences a deliberate indifference" to the plaintiff's constitutional rights such that it can "be properly thought of as a . . . policy or custom that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

First, the Court notes that Ford has not stated a viable constitutional claim against any Defendant. He therefore cannot state a claim for supervisory liability. *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of [appellant's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir. 1986) ("There is no supervisory liability without primary liability."). For this reason alone, Ford's claim against the Captains should be dismissed.

Moreover, Ford does not explain the basis for his claim that the generally deficient training resulted in his possible exposure to COVID-19 or being denied bedding, clothing, showers, proper medical attention, and COVID-19 testing. *See* Compl. 3; Questionnaire 7–8. Ford also does not identify any pervasive affirmative acts by the Captains that resulted in such a policy or custom, or explain *how* training provided by the Captains was deficient. *See* Questionnaire 7–8. Rather, Ford has simply named the Captains because they are individuals with titles that he thinks might have some policymaking or training role and claims that they should be held responsible. *See* Questionnaire 7 (contending that "as superior officers . . . Captains are held responsible for any officers['] conduct"). Thus, Ford does not plead facts sufficient to survive screening concerning a policy or custom within Montford or for the Captains' failure to train officers. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it

must contain specific facts."); *Backe v. City of Galveston*, 2 F. Supp. 3d 988, 1007 (S.D. Tex. 2014) ("Vague assertions regarding the need for 'better or more training' [are] insufficient for a constitutional failure to train claim." (quoting *City of Canton*, 489 U.S. at 391)); *Gallaher v. City of Maypearl*, No. 3:17-CV-1400-M, 2018 WL 700252, at *6 (N.D. Tex. Feb. 2, 2018) (dismissing plaintiff's failure to train claim in part because plaintiff did "not point to a specific training program or identify what training or supervision should have occurred to prevent the allegedly unconstitutional actions of" defendants).

The undersigned therefore recommends dismissal of Ford's claims against the Captains.

### III.    Recommendation

For these reasons, the undersigned **DIRECTS** the Clerk to amend the case caption to add Defendants (1) Gloria J. Carrington; (2) Captain Brant Donaldson; (3) Captain Ricky Rodriguez; (4) Captain Clayton D. Straughan; and (5) Captain Adam Ybarra.  In addition, the undersigned recommends that the United States District Judge **DISMISS with prejudice** Ford's Complaint and all claims alleged therein for failure to state a claim in accordance with 28 U.S.C. § 1915, except for Ford's claims against Montford, which should be **DISMISSED without prejudice**.

### IV.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that

merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 7, 2024.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**